IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In Re:

WILLIAM FREDRICK VOIGTS, JR.,　　　　　　Case No. 22-40705-12
　　　　　　Debtor.

**DEBTOR'S MOTION FOR:
(A) ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL;
(B) GRANTING SECURITY INTERESTS AND PRIORITY CLAIMS;
(C) GRANTING RELATED RELIEF; AND
(D) SCHEDULING A FINAL HEARING ON THE MOTION PURSUANT TO
BANKRUPTCY RULE 4001(C)**

COMES NOW the Debtor, William Fredrick Voigts, Jr., by his attorneys, Stumbo Hanson, LLP, and moves the Court for an interim order substantially in the form attached hereto and marked Exhibit "B," and a final order to be submitted later, (i) authorizing Debtor's use of cash collateral, as such term is defined in 11 U.S.C. § 363(a) in which the Baldwin State Bank asserts a security interest, (ii) granting security interests and priority claims; (iii) determining adequate protection of the Bank's claim pursuant to 11 U.S.C. §§ 363 and 1205; (iv) granting related relief; and (v) requesting that the Court (a) schedule a final hearing on the Motion pursuant to Federal Rule of Bankruptcy Procedure 4001, within thirty days of the Petition Date, to consider entry of the final Order and (b) approve certain notice procedures with respect thereto. The facts and circumstances supporting this Motion are set forth below:

## STATUS OF CASE AND JURISDICTION

1. On November 28, 2022 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 12 of the Bankruptcy Code.

2. The Debtor has continued in possession of his property and has continued to operate and maintain his farm business as Debtor-in-Possession pursuant to § 1203 of the Bankruptcy Code.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are §§ 105(a), 362, 363 and 1205 of title 11 of the United States Code ("Bankruptcy Code"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

## BACKGROUND OF THE DEBTOR

4.      Mr. Voigt has been farming since being five years of age when his mother and father assigned farm chores to him. His responsibilities increased as he matured and he started out farming part-time with his late father in high school, and then full-time in 1961. Prior to graduation the Voigts' farming operation was initially located in rural Johnson County, Kansas. As urban spaul occurred in Johnson County, Mr. Voigt relocated his farming headquarters to its current location.

5.      The Debtor's Bankruptcy Schedules reflect $3,477,240.00 in total assets and $2,275,574.37 in total liabilities. The Debtor's financial performance depends primarily upon crop yields, market prices for those crops, and the costs of rent for farm ground, machinery payments and repairs, and crop input expenses.

6.      Debtor has off farm income of Social Security which generates approximately $19,000 annually.

7.      The Debtor's cash flow has been negatively impacted by the fact that cash rent for farm ground and crop inputs have dramatically increased since 2014 over what had been paid the previous years. This coupled with a couple of bad crop production years and the Debtor having also lost approximately 1000 acres of agricultural real estate over the past six years due in part to

2

his line of credit having not been renewed by his principal lender, the profit margin upon which he relied to make large machinery payments was eroded.

8. Because the Debtor has fully utilized his available line of credit, he has been struggling to timely meet his farm operating expenses, finding himself utilizing funds which should have been remitted toward secured real estate, machinery and equipment payments to keep operating while seeking to refinance his debts and waiting on his cash flow to improve. Debtor has also suffered some health-related matters which appear now to be stabilized.

## SUMMARY OF PREPETITION INDEBTEDNESS OF THE DEBTOR

9. Prior to the Petition Date, the Debtor funded his continued operations through his farm crop sales revenues as supplemented by his produce and garden plant nursery business.

10. Debtor's crop revenue receipts were/are subject to the prior perfected security interest in favor of Baldwin State Bank.

11. Debtor asserts that the Bank's claim secured by liens on his machinery, equipment and crops and real estate is not fully secured.

## DEBTOR'S PROPOSED USE OF CASH COLLATERAL

12. Debtor has an immediate and critical need to use Cash Collateral consisting of the 2022 fall crop proceeds, his federal crop insurance payments in approximate amount of $160,000.00 in order to continue his farming operation, preserve and protect the value of his assets, to meet the ongoing day to day operating expenses for the farm. He will require use of Cash Collateral over the next 120 days in order to conduct the day-to-day farming operations, including but not limited to, the payment of harvest expenses, cash rent to landlords, fuel, maintenance and repairs, the purchase of supplies and the payment of various other overhead expenses and ongoing expenses in this Chapter 12 Case.

13.     Debtor's cash needs through March 31, 2023 are set forth in the interim budget attached hereto as Exhibit "A" (the "Budget"). Without the continued use of Cash Collateral in accordance with the terms of this Interim Order, Debtor's estate and creditors will suffer immediate and irreparable harm.

14.     The relief requested in this Motion is essential for the operations of Debtor's management and preservation of his property. Debtor seeks to negotiate in good faith with Baldwin State Bank regarding Debtor's use of Cash Collateral to fund operations during the 120-day budget period (the "Budget Period"). As a result of these negotiations, the Debtor is hopeful that the Baldwin State Bank will consent to Debtor's use of Cash Collateral during the Budget Period in accordance with the Budget and terms of the proposed Interim Order.

15.     Debtor proposes that he be authorized to use the cash collateral of the Bank in the form of crop proceeds pending confirmation of a Chapter 12 Plan of Reorganization. In exchange for use of this cash collateral, Debtor proposes that the Bank be given adequate protection as set forth below.

## RELIEF SOUGHT

16.     By this Motion, the Debtor seeks entry of the Interim Order pursuant to sections 105(a), 362, 363, and 1205 of the Bankruptcy Code, and Rules 2002, 4001, 6004 and 9014 of the Bankruptcy Rules authorizing Debtor to use Cash Collateral as proposed herein. Based on the provisions of the Adequate Protection Package (as defined below), the Debtor submits that the Bank is adequately protected (to the extent it does not consent to the relief requested herein), and that Debtor should be permitted to use the Cash Collateral under the terms provided in the Interim Order and the Budget.

(a)     **Standards for Adequate Protection**

4

17. Bankruptcy Code § 363(c)(2) permits a debtor-in-possession to use, sell or lease "cash collateral" under subsection (c)(1) only if either of two alternative circumstances exist: (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and hearing, authorizes such use, sale or lease. 11 U.S.C. § 363(c)(2). If a secured creditor does not consent to the use of its cash collateral, pursuant to §§ 363(c)(2)(B) and 363(e) of the Bankruptcy Code, the Court may authorize the Debtor to use cash collateral if it determines that the Debtor has provided "adequate protection" to the secured creditor's (in this case First State Bank of Hoxie) interest in the cash collateral.

18. The Bankruptcy Code does not explicitly define "adequate protection." However, § 1205(b)(2) permits a debtor-in-possession to use "cash collateral" if the Court determines that providing the creditor an additional or replacement lien to the extent of the Debtor's use of the "cash collateral" does not result in a decrease in the value of the property securing such lender's claim.

19. As described below, the Debtor submits that Baldwin State Bank is adequately protected for any potential diminution in the value of its prepetition collateral, including any such diminution resulting from Debtor's use of Cash Collateral during the Budget Period. Accordingly, the Court should approve the Motion even in the absence of Baldwin State Bank's consent.

**(b)** **The Prepetition Lender (Baldwin State Bank) is Adequately Protected Under Sections 363 and 1205 of the Bankruptcy Code**

20. Specifically, the Interim Order provides that the Bank will receive the following protections (together, the "Adequate Protection Package"):

(a) The Bank will receive (i) a mortgage lien on the Debtor's farmstead to the

5

extent of the value of the cash collateral utilized by the Debtor from prepetition crop proceeds, and (ii) a superpriority administrative expense claim under Section 507(b) of the Bankruptcy Code. The Bank will continue to possess a first position security interests in pre-petition crops and mortgages upon any and all its pre-petition collateral according to the priorities as presently exist.

(b) Additionally, Debtor will maintain replacement insurance coverage on his assets.

21. Debtor submits that the foregoing Adequate Protection Package protects the Bank for any potential diminution in the value of the Prepetition Collateral, including the Cash Collateral, subsequent to the Petition Date.

### (c) **Approval of the Cash Collateral Use Arrangement is in the Best Interests of Estate's Assets**

22. A denial of the Debtor's requested relief will cause immediate and irreparable harm to Debtor and the estate, and will also have a detrimental effect on the Prepetition Collateral. Absent the continuing use of Cash Collateral, Debtor would have no ability to meet his ongoing obligations to suppliers, vendors, and landlords as he struggles to plant the 2023 wheat crop and harvest his 2022 fall crops standing in the fields. If Debtor is unable to pay his ongoing obligations, he will not be able to operate. If Debtor does not operate his farming interests, his revenue stream will all but cease and he will be forced to liquidate his assets at a fire sale which will only tend to risk partial payment of the claims. In contrast, Debtor's continued use of Cash Collateral will ensure that the "going concern" value of his assets is preserved, a value substantially greater than the value which would be realized from a "piece-meal" or "fire sale" liquidation of Debtor's assets if the Debtor were forced to cease all operations immediately.

## REQUEST FOR INTERIM RELIEF

23. Bankruptcy Rules 4001(b) and (c) permit a court to approve a debtor's request for use of cash collateral and interim financing during the 14-day period following the filing of a motion for authority to use cash collateral or use of credit "as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2) and (c)(2). In examining such request under Bankruptcy Rule 4001, courts apply the same business judgment standard as is applicable to other business decisions. See, e.g., In re Ames Dept. Store, Inc., 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990), In re: Campbell Sod, Inc. 2007 WL 3071609 (Bankr. D. Kan. Oct. 18, 2007). The Debtor submits that, for the reasons set forth herein, authority for Debtor to use the Cash Collateral on an interim basis as requested in this Motion is necessary to avert immediate and irreparable harm to Debtor's continued farming enterprise and their estate.

## REQUEST FOR FINAL HEARING

24. Pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2), the Debtor respectfully requests that the Court set a date for the Final Hearing that is no later than thirty (30) days following the Petition Date.

WHEREFORE, the Debtor respectfully request that the Court enter an Order in substantially the form attached hereto as Exhibit "B" (i) granting the relief requested on an interim basis and (ii) granting such other and further relief as the Court deems just and proper.

STUMBO HANSON, LLP

By: /s/ Tom R. Barnes II
TOM R. BARNES II #13437
2887 S.W. MacVicar Ave.
Topeka, KS 66611

7

785-267-3410/fax 267-9516
tom@stumbolaw.com
Attorneys for Debtor

Exhibit "A"

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRIT OF KANSAS

In re: William F. Voigts, Jr.  
        Debtor

Case No. 22-_____-12

### Budget to Accompany Motion for Authority to Utilize Cash Collateral

| Income | Total | December | January | February | March |
|---|---|---|---|---|---|
| Grains | $ - | | | | |
| Soybeans | $ 19,000 | | $ 19,000 | | |
| Government Payments | $ 30,000 | $ 30,000 | | | |
| Sorghum Hay | $ - | | | | |
| Federal Crop Insurance | $ 55,000 | $ 55,000 | | | |
| Custom Income | $ - | | | | |
| **GROSS FARM INCOME** | $ 104,000 | $ 85,000 | $ 19,000 | $ - | $ - |
| | | | | | |
| **EXPENDITURES** | | | | | |
| Chemicals | $ 12,000 | $ 12,000 | | | |
| Labor | $ 12,800 | $ 3,200 | $ 3,200 | $ 3,200 | $ 3,200 |
| Fertilizer | $ 4,500 | | | | $ 4,500 |
| Fuel | $ 12,800 | $ 3,200 | $ 3,200 | $ 3,200 | $ 3,200 |
| Insurance-Crop | $ 16,000 | $ 16,000 | | | |
| Insurance-Farm | $ 4,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 |
| Repairs | $ 12,000 | $ 3,000 | $ 3,000 | $ 3,000 | $ 3,000 |
| Seed | $ 4,200 | | | | $ 4,200 |
| Supplies | $ 4,800 | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 |
| Taxes | $ 3,600 | $ 3,600 | | | |
| Utilities | $ 3,200 | $ 800 | $ 800 | $ 800 | $ 800 |
| Baldwin State Bank Payment on Note No. 0251 | $ 48,974 | | $ 48,974 | | |
| Patriots Bank | $ 9,283 | $ 2,321 | $ 2,321 | $ 2,321 | $ 2,321 |
| John Deere Credit Gators | $ 1,651 | $ 413 | $ 413 | $ 413 | $ 413 |
| Kubota Credit ZD1211 Mower & B2601 | $ 3,311 | | | | $ 3,311 |
| **TOTAL OPERATING EXP** | $ 153,119 | $ 46,734 | $ 64,108 | $ 15,134 | $ 27,144 |
| Living & Income Tax | $ 6,400 | $ 1,600 | $ 1,600 | $ 1,600 | $ 1,600 |
| **TOTAL EXPENSES** | $ 159,519 | $ 48,334 | $ 65,708 | $ 16,734 | $ 28,744 |

| | |
|---|---|
| **Total Income** | $ 104,000 |
| **Total Expenses** | $ (159,519) |
| | $ (55,519) |

In Re:

WILLIAM FREDRICK VOIGTS, JR.,           Case No. 22-
           Debtor.

### INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL; GRANTING RELATED RELIEF; AND SCHEDULING A FINAL HEARING ON THE MOTION PURSUANT TO BANKRUPTCY RULE 4001(C)

This matter is before the Court on the Motion (the "motion") of William Fredrick Voigts, Jr., as debtor and debtor-in-possession in the above captioned Chapter 12 case (the "Debtor"), requesting entry of an interim order authorizing Debtors to utilize cash collateral of Baldwin State Bank and to grant security interests and super priority claim status; granting related relief and scheduling a final hearing on the Motion pursuant to Bankruptcy Rule 4001(c).

Based upon this Court's review of the Motion and all matters brought to the Court's attention at the interim hearing, pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2) (the "Interim Hearing"), and after due deliberation and consideration, the Court makes the following findings of fact and conclusions of law applicable to Debtor's request to use cash collateral.

THE COURT HEREBY FINDS AND DETERMINES:

A.      On November 28, 2022, (the "Petition Date"), Debtor filed with this Court a voluntary petition for reorganization under Chapter 12 of the Bankruptcy Code and is continuing to manage his

properties and to operate his farm as a debtor-in-possession pursuant to Section 1203 of the Bankruptcy Code. Carl B. Davis has been appointed as Chapter 12 Trustee.

B. Debtor is engaged in the business of farming with his farmstead and headquarters being located at 278 E. 2100 Road, Wellsville, Kansas.

C. An immediate and ongoing need exists for Debtor to obtain utilize proceeds from the sale of crops to continue the operation of his farming enterprise as debtor-in-possession under Chapter 12 of the Bankruptcy Code, to minimize the disruption of Debtor's farming activities and to allow the Debtor to explore a restructure and/or refinancing of his debts. Debtor has not been able to obtain financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as a special administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code, and the Debtor is not able to obtain financing in the form of credit secured by liens that are junior to existing liens on property of the estate pursuant to Sections 364(c)(2) and (c)(3) of the Bankruptcy Code.

D. The Debtor is hereby authorized to use cash collateral to the extent of $160,000.00 in the course of his farming operations until such time as the Court can hear the Debtor's motion, and without prejudice to any parties asserting an objection thereto.

E. Good cause has been shown for the entry of this Order and authorization for Debtor to utilized cash collateral of Baldwin State Bank as hereinafter provided.

F. Entry of this Order will minimize disruption of Debtor's farming activities and operations, will preserve the assets of Debtor's estate and is in the best interests of Debtor, his creditors and this estate. The purposes for which the requested use of cash collateral will be utilized appear fair and reasonable, reflect Debtor's exercise of business judgment and are supported by reasonably

equivalent value and fair consideration.

      G.      The Court has jurisdiction to enter this Order pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding, as defined in 28 U.S.C. § 157(b)(2).

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

      1.      <u>Grant of Motion; Authorization of Use of Cash Collateral.</u> The Motion is hereby granted and Debtor is hereby authorized to utilize cash collateral of Baldwin State Bank in accordance with the terms stated above up to an aggregate principal amount outstanding at any time not to exceed $160,000.00.

      2.      <u>Post-Petition Liens.</u> Subject to the provisions hereof, the claim of Baldwin State Bank shall be, and hereby is, secured by a perfected first priority security interests in and liens upon all Debtor's crops growing and harvested and all proceeds and products thereof for use of its cash collateral.

      3.      <u>Preservation of Rights Granted Under This Order.</u>

          a.      If this Chapter 12 case is dismissed, converted or substantively consolidated, then neither the entry of this Order nor the dismissal, conversion or substantive consolidation of this Chapter 12 case shall affect the rights of Baldwin State Bank under this Order, and all of the rights and remedies hereunder of said claimant shall remain in full force and effect as if this Chapter 12 case has not been dismissed, converted, or substantively consolidated.

          b.      Debtor shall not seek, and it shall constitute an Event of Default if Debtor seeks, or if there is entered, any Order dismissing the Chapter 12 case. If an order dismissing the Chapter 12 case is at any time entered, such order shall provide (in accordance with Sections 105 and

349 of the Bankruptcy Code) that (i) the DIP Liens granted to and conferred upon Baldwin State Bank shall continue in full force and effect and shall maintain its priority as provided in this Order until all DIP Obligations shall have been paid and satisfied in full (and that such DIP Liens shall, notwithstanding such dismissal, remain binding on all interested parties) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Liens referred to herein.

4. <u>Automatic Perfection of DIP Liens.</u> The DIP Liens shall be deemed valid, binding, enforceable and perfected upon entry of this Order. Baldwin State Bank shall not be required to file any UCC-1 financing statements, mortgages, deeds of trust, security deeds, notices of lien or any similar document or take any other action (including possession of any of the Collateral) in order to validate the perfection of the DIP Liens. If Baldwin State Bank shall, in its discretion, choose to file any such mortgages, deeds of trust, security deeds or UCC-1 financing statements, or take any other action to validate the perfection of any part of the DIP Liens, Debtor is directed to execute any documents or instruments as said creditor shall reasonably request, and all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Order.

### #

Approved,
STUMBO HANSON, LLP

By:_____
TOM R. BARNES II #13437
2887 S.W. MacVicar Ave.
Topeka, KS 66611
(785) 267-3410; 267-9516 (fax)
tom@stumbolaw.com
Attorneys for Debtors

4